J-S24023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.R.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1761 MDA 2017 |

Appeal from the Order Entered, October 18, 2017,
in the Court of Common Pleas of York County,
Juvenile Division at No(s):  CP-67-DP-0000014-2016.

| | | |
|---|---|---|
| IN THE INTEREST OF: R.R.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1763 MDA 2017 |

Appeal from the Order Entered, October 16, 2017,
in the Court of Common Pleas of York County,
Orphans' Court at No(s):  2017-0030.

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 28, 2018**

R.B. ("Father") appeals from the order involuntarily terminating his parental rights to his four-year-old son, R.R.M. ("Child").[1] Father also appeals from the order changing Child's permanency goal from reunification to adoption.[2] In addition, Father's counsel had filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we grant counsel's petition to withdraw and affirm the termination and goal change.

The record reveals that Mother and Child had been on the radar of the York County Office of Children, Youth and Families ("Agency") for some time. The Agency had been involved with Mother's family when she was a minor. In November 2015, the Agency investigated claims that Mother and Child were living in a van in the driveway of the maternal grandparents. There were also claims of drug use, but upon an investigation, the allegations could not be substantiated.

In January 2016, the Agency sought emergency protective custody of Child after allegations were made that Mother had left Child unsupervised and

---

[1] The orphans' court also terminated Mother's parental rights, but she does not appeal. The trial court evidently terminated the potential rights of another man, R.D.M. who was listed as the father on the subject child's birth certificate. However, subsequent DNA testing revealed that the Father, R.B., is the biological parent of the subject child. R.D.M. was served with notice of the termination hearing, but neither he nor counsel appeared. He does not appeal.

[2] Because Father's appeals arise from the same set of facts and involve similar issues, we have consolidated the appeals for ease of disposition.

was using drugs. Child was found to be in the care of the maternal grandfather, who could not be a resource due to his involvement with the Agency regarding his own minor child, who was not a subject in these proceedings. It was further alleged that Mother was in Maryland. The Agency contacted Father, who resided in Maryland; he indicated that he had not been involved with Child. Mother tested positive for cocaine, marijuana and opiates; Mother admitted to using heroin. Child was placed in foster care.

Child was adjudicated dependent on February 10, 2016. Father did not attend the hearing. At this juncture, the goal was reunification. A status conference was held in April 2016. Father sent a letter to the Agency indicating that he wished to be a resource, but the Agency could not reach Father with the telephone number he provided to them. Since the initial letter, however, the Agency did not have any contact with Father.

In July 2016, following a permanency review hearing, the court determined that neither parent had complied with the permanency plan. Although he continued to receive notice of the hearings, Father refused to participate in either the Agency's reunification plan or the court's permanency review hearings. In fact, the first time the Agency's caseworker met Father was at the initial termination hearing in May 2017.[3] In August 2017, the court concluded its termination hearing. In October, the court entered orders

_____

[3] At the May termination hearing, Father appeared and requested counsel. The court appointed Marc Semke, Esq. to represent Father and continued the portion of the termination hearing that pertained to him until August 17, 2017. Father did not appear for the continued hearing.

terminating Father's rights and changing the reunification goal to adoption. Father appeals.

He presents two issues:

1. Whether the court erred in finding that the [Agency] proved by clear and convincing evidence that the parental rights of [] Father should be terminated pursuant to 23 Pa.C.S.A. § 2511(a).

2. Whether the court erred by changing the court ordered goal from reunification to adoption.

Father's Brief, at 4.

Before we reach the merits of the issues, we address Father's counsel's application to withdraw as counsel and his corresponding **Anders** brief. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (*quoting* **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)) (stating, "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw").

In **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights. We stated that counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw representation and must submit an **Anders** brief. **Id**. at 1275. To withdraw pursuant to **Anders**, counsel must: 1) petition the

Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points that the appellant deems worthy of review. **In re V.E.**, 611 A.2d at 1273. Thereafter, this Court examines the record and determines whether the appeal is wholly frivolous. **Id.**

Our Supreme Court, in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), stated that an **Anders** brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

The **Santiago** Court reaffirmed the principle that indigents "generally have a right to counsel on a first appeal, [but] . . . this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing such an appeal." **Santiago**, 978 A.2d at 357 (citation omitted). Our Supreme Court stated:

> In the Court's view, this distinction gave meaning to the Court's long-standing emphasis on an indigent appellant's right to "advocacy." . . . As the Court put it, "[a]lthough an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments."

***Santiago***, 978 A.2d at 357-358 (citation and quotation omitted). Father's counsel has complied with all of the requirements of ***Anders***/***Santiago***. We thus proceed to consider his assessment of Father's claims.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re D.L.B.***, 166 A.3d 322, 325 -326 (Pa. Super. 2017) (citations and internal quotation marks omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the

opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (***en banc***) (citation and quotation marks omitted).

In this case, the trial court terminated Father's parental rights pursuant to Sections 2511(a) (1), (5), (8) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

....

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (5), (8), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm an order terminating parental rights. *In re M.M.*, 106 A.3d 114, 117 (Pa. Super. 2014).

Here, we find clear and convincing evidence that Father refused to parent Child. He did nothing to involve himself in Child's life. At least since Child's removal in January 2016, the Father has not visited Child. He did not seek contact of the Child since his the initial letter to the Agency. He did not seek the help of the Agency to reunify with Child. The Agency properly established grounds warranting termination under § 2511(a)(1).

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability.... [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted). "[I]n cases where there is no evidence of a bond between a parent and child, it is

reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted). Additionally, when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

In this matter, we note that the lower court evidently issued two opinions. The first was issued contemporaneously with the termination order. The second, issued after Father's appeal, refers to the substantive discussion of the first. The court's opinion addresses the termination of Mother, Father, and a third person, R.M., who was the purported father before the appellant Father took a DNA test that identified him as the biological parent and ruled out R.M. Curiously, the Agency still pursued termination of R.M.'s rights and the orphans' court so ordered it.

In the § 2511(b) analysis of its opinion, the court noted that Father had not seen Child during the duration of the dependency proceedings. Moreover, Father likely had never met Child until the initial termination hearing in May 2017. The orphans' court observed that Child reacted to Father as he did to any other stranger who was in the courtroom. Child does not have sibling bonds, because he has no known siblings. However, his maternal aunt, who is only a few months older than Child, is also placed with Child's pre-adoptive

foster parents. We agree with the orphans' court's conclusion that all of Child's significant bonds are with his foster family members. Child views the pre-adoptive foster family as his parental figures. Because there exists clear and convincing evidence that termination best serves Child's needs and welfare under § 2511(b), we discern no abuse of discretion.

We turn now to Father's second contention that the lower court abused its discretion by changing Child's permanency goal to adoption. We apply the following standard of review.

> …[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's interferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

The Juvenile Act governs proceedings to change a child's permanency goal. *See* 42 Pa.C.S.A. §§ 6301 – 6375. Trial courts must apply the following analysis when considering a goal change petition.

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this

> Court held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citations and quotation marks omitted).

At the time of the goal change, Child had been in placement seventeen months. Given Father's refusal to parent Child, or even meet Child, and given Father's refusal to comply with the Agency's service plan, the trial court had no choice but to find that these factors favored changing the goal. The record confirms that it would be in Child's best interest to change his permanency goal from reunification to adoption. Again we discern no abuse of discretion.

Upon our careful and independent review of the record, we grant Father's counsel's application to withdraw and affirm the lower court's orders terminating Father's rights and changing the reunification goal to adoption.

Orders entered. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2018

- 12 -